Evidentiary rulings. Mitchell Aff. The bases for the rulings are in the trial transcript.
¶¶ 36–40, 44–45.  E.g., Tr., 184–205, 753–60, 1023–24.

SCHOLASTIC, INC., J.K. Rowling, and Time Warner Entertainment Company, L.P., Plaintiffs/Counterclaim Defendants,

v.

Nancy STOUFFER, Defendant/Counterclaim and Crossclaim Plaintiff,

v.

ABC Corporations (1 through 99), Crossclaim Defendants.

No. 99 CIV.11480 (AGS).

United States District Court, S.D. New York.

Feb. 27, 2003.

Edward H. Rosenthal, Frankfurt Kurnit Klein & Selz, P.C., New York City, for Scholastic Inc. and J.K. Rowling.

Dale M. Cendali, O'Melveny & Myers LLP, New York City, for Time Warner Entertainment Company, L.P.

Thomas S. McNamara, Indik & McNamara, P.C., Philadelphia, PA, James A. Power, Jr., Power Del Valle, New York City, Local Counsel for Nancy Stouffer.

### MEMORANDUM ORDER

SCHWARTZ, District Judge.

By order dated September 17, 2002, the Court granted summary judgment to plaintiffs in the above entitled action. In such order, the Court also found that plaintiffs were entitled to an award of attorneys' fees incurred in the defense of defendant Nancy Stouffer's Lanham Act counterclaims. *See Scholastic Inc. v. Stouffer*, 221 F.Supp.2d 425, 444 (S.D.N.Y. 2002) ("September Order"). By application dated December 12, 2002, the two law firms representing plaintiffs, O'Melveny & Myers LLP and Frankfurt Kurnit Klein & Selz, P.C.[1], jointly request that the Court award fees totaling $1,648,095.77.[2] For the reasons set forth below, the Court orders awards plaintiffs attorneys' fees of $576,408.52.

In determining the proper fee award, the Court begins by noting that the amount of such award is within the Court's discretion. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 222 (2d Cir.2003). The Court also notes that although this action involved several claims, asserted by both plaintiffs and defendant, the Court's September order only awarded plaintiffs the attorneys' fees incurred in the *defense* of Stouffer's trademark claims. Thus, all of the fees incurred before Stouffer filed her Answer and Counterclaims (September 8, 2000) will not be included in the fee award. Based on the time records submitted by both law firms such fees total $90,935.60. Specifically, the O'Melveny firm billed a total of $26,045.60 in fees prior to September 8, 2000. (See Supplemental Declaration of Dale Cendali, January 28, 2003, Exh. 1; Declaration of Dale Cendali, December 12, 2002 at 5–6 (listing individual attorneys' hourly rates)). Dale Cendali (partner) billed 19 hours at $400 per hour, for a total of $7,600 in fees;

1. Formerly known as Frankfurt Garbus Kurnit Klein & Selz, P.C.

2. Plaintiffs have also applied for an award of costs incurred in defense of Stouffer's Lanham Act counterclaims. However, pursuant to Local Rule 54.1(a), plaintiffs' request for taxation of costs has been automatically stayed pending Stouffer's appeal of the Court's earlier ruling. Accordingly, the Court makes no finding at this time with respect to plaintiffs' application for costs incurred in the litigation.

Claudia Ray (counsel) billed 38.4 hours at $284 per hour, for a total of $10,905.60 in fees; Christopher Murray (partner) billed 2.2 hours at $425 per hour, for a total of $935 in fees; Joanne Darkey (associate) billed 16.5 hours at $255 per hour, for a total of $4,207.50 in fees; and Lauren Rasmus (associate) billed 13.7 hours at $175 per hour, for a total of $2,397.50 in fees. (See *id.*). The Frankfurt Kurnit firm billed a total of $64,890 in fees prior to September 8, 2000. (See Supplemental Declaration of Edward Rosenthal, dated January 28, 2003, Exh. A). Edward Rosenthal (partner) billed 131.6 hours at $375 per hour, for a total of $49,350 in fees; and Jessie Beeber (associate) billed 77.7 hours at $200 per hour, for a total of $15,540 in fees. (See *id.*).[3]

The Court also finds the total fees billed by the O'Melveny firm to be excessive in several respects. First, while O'Melveny requests fees based on the hours billed by attorney Paul Cirino (a former O'Melveny associate), the contemporaneous time records submitted by the firm contain no entries for work performed by Cirino.(Compare Cendali Decl., December 12, 2002 at 5 with Cendali Supplemental Decl., January 28, 2003, Exh. 1). Thus, the Court declines to award the O'Melveny firm the $59,227.20 in fees attributed to

time billed by Cirino. *See New York State Assoc. for Retarded Children v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir.1983) (holding that attorneys' fees will only be awarded when such fees are documented by contemporaneous time records); *see also Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*, 2002 WL 1766548, at *2 (S.D.N.Y. July 30, 2002) (awarding attorneys' fees based on contemporaneous time records in a Lanham Act action).

Second, as defendant points out (Def. Surreply Memo. in Opposition to the Fee Application at 4–5), certain discrepancies exist between the total number of hours listed in the firm's initial declaration in support of the fee application and the number of hours listed in the contemporaneous time records submitted to the Court. (Compare Cendali Decl., December 12, 2002 at 5–7 with Cendali Supplemental Decl., January 28, 2003, Exh. 1). Specifically, while the initial declaration lists 699.2 hours billed by former O'Melveny associate Michael Holden, the contemporaneous time records show Holden to have billed a total of 666.8 hours.[4] This difference of 32.4 hours, when multiplied by Holden's blended hourly rate of $273.50, necessitates the reduction of Holden's fees by $8,861.40.[5] Similarly, while plaintiffs'

---

**3.** Stouffer also argues that the Court should not award any reimbursement for fees incurred in connection with a related action filed by Stouffer in the Eastern District of Pennsylvania. (See Def. Surreply in Opposition to Plaintiffs' Fee Application at 10–11). However, the Pennsylvania action was dismissed by stipulation of the parties on September 1, 2000, and thus all the fees related to that action are included in the group of pre-September 8, 2000 fees that the Court has excluded from the fee award. (See *supra*). Accordingly, the Court declines to make a separate deduction from the fee award based on the fact that certain fees arose out of the Pennsylvania action.

**4.** Defendant maintains that the contemporaneous time records show Holden to have billed 666.79 hours. However, the time records do not indicate that Holden, or any other O'Melveny attorney, billed his time in hundredths of hours (i.e. 36 second increments), and thus it would be impossible for his total number of hours to equal 666.79 hours.

**5.** Holden had two hourly rates over the course of the litigation. During the seven months of 2000 in which the O'Melveny firm billed time in this litigation his hourly rate was $275, and during the six months of 2001 in which Holden billed time in this action his hourly rate was $268. (See Cendali Decl., December 12, 2002 at 6). Because his total

initial application lists a total of 723.7 hours billed by former O'Melveny associate Lauren Rasmus, the time records submitted to the Court show Rasmus to have billed 706.5 hours, a difference of 17.2 hours. When multiplied by Rasmus' blended hourly rate of $194,[6] the discrepancy in Rasmus' total hours requires a reduction of her total fees $3,336.80. Finally, although plaintiffs' initial declaration lists a total of 95.4 hours billed by O'Melveny associate Samantha Hetherington, the time records submitted by the firm indicate that she only billed a total of 82.9 hours, a difference of 12.5 hours. When multiplied by Hetherington's blended hourly rate of $191,[7] this discrepancy requires a reduction of her total fees by $2,387.50. Accordingly, in recognition of the hours discrepancies for Holden, Rasmus, and Hetherington, the Court reduces O'Melveny's requested award by $14,585.70.

█ Third, the Court notes that fifteen (15) O'Melveny attorneys and thirteen (13) of the firm's paralegals billed time on this action between June 2000 and October 2002, and a review of the firm's time records indicate that the total amount of fees are excessive.[8] (See Cendali Supplemental Decl., January 28, 2003, Exh. 1). For

example, the records indicate that in late 2001, O'Melveny began assigning much of the work related to this case to Jennifer Choe, while at the same time significantly decreasing the amount of work handled by other associates who had previously billed many hours in this litigation (such as Lauren Rasmus). Thus, while Choe billed 39.6 hours (at $323 per hour) between October 10 and October 25, 2001, much of that time was spent reviewing documents in order to become familiar with the litigation. (See id.) Choe also billed 38 hours between November 4 and November 9, 2001, with much of that time spent reviewing documents. (See id). While the Court recognizes that some of these fees would have been incurred regardless of which attorneys were assigned to carry out the particular tasks involved, the Court will not hold defendant solely responsible for fees incurred as a result of the O'Melveny firm's decision to change the roster of attorneys assigned to the case. Accordingly, the Court reduces the total fees billed by Choe during these two periods by one-half ($12,532.40).

█ The Court also notes that O'Melveny has applied to be reimbursed for $807.50 in fees billed by former associate Joshua Thomas. (Cendali Decl., Decem-

---

number of hours includes time billed at both of these hourly rates, the Court applies a "blended" rate (here, the average of Holden's two rates) to the reduction of the total fees billed by Holden.

**6.** Rasmus' hourly rate for the final seven months of 2000 was $175; her hourly rate for all of 2001, as well as for the first two months of 2002 (i.e. the months during which she billed time in this action), her hourly rate was $203. (See Cendali Decl., December 12, 2002 at 6). Her blended rate is therefore an average monthly rate for the 21 month period during which she worked on this litigation.

**7.** Hetherington began billing time in this action in November 2001. (See Cendali Supple-

mental Declaration, January 28, 2003, Exh. 1). Her hourly rate was $182 until May 2002, when it was raised to $199. (See Cendali Decl., December 12, 2002 at 6).

**8.** Presumably, each attorney working on the case reviewed the pleadings and the case file in preparation for his or her assigned task(s). This exercise involved, by definition, a large volume of duplicative work. The time records show that such duplication was exacerbated by the fact that many of the associates assigned to this case were later assigned to work on other O'Melveny cases and had no further involvement with this litigation, and at least two associates left the firm while the case was pending. (See Cendali Decl., December 12, 2002, at 3–4).

ber 12, 2002 at 7). The time records submitted to the Court indicate that these fees resulted from the 2.5 hours (at $323 per hour) that Thomas spent reading background materials related to this action. (See Cendali Supp. Decl., January 23, 2003, Exh. 1 (records July 12, 2001)). However, after familiarizing himself with the background of the litigation, Thomas did not perform *any* further work on the case. Defendant should not be held responsible for the fees generated by a lawyer who performed no substantive legal work beyond the review of background materials. Accordingly, the Court further reduces plaintiffs' fee award by $807.50.

■ Fourth, the Court notes that the O'Melveny firm billed a total of $44,881.80 in fees arising out of the preparation of a declaration by one third-party fact witness (Joan Korbin Wright). Specifically, Dale Cendali (partner) billed 37.3 hours at $428 per hour and 10.6 hours at $441 per hour, for a total of $20,639 in fees;[9] Claudia Ray (counsel) billed 33.9 hours at $308 per hours, for a total of $10,441.20 in fees;

Michael Holden (associate) billed 12.6 hours at $268 per hour, for a total of $3,376.80 in fees; Lauren Rasmus (associate) billed 4.7 hours at $203 per hour, for a total of $954.10 in fees; Jennifer Chose (counsel) billed 15 hours at $323 per hour, for a total of $4,845 in fees; Katy Sabich–Robison (associate) billed 1.8 hours at $268 per hour, for a total of $402 in fees; and Johanna Schmitt (associate) billed 3.9 hours at $203 per hour and 15.6 hours at $220 per hour, for a total of $4223.70 in fees. While recognizing that this particular declaration contained significant factual evidence, the Court finds that the total number of hours (135.4) spent preparing this declaration was excessive. Accordingly, the Court reduces the total fees incurred with respect to this declaration by two-thirds ($29,891.28).

■ After reducing plaintiffs' fee application as set forth above, the O'Melveny firm's fee request stands at $1,251,105.01,[10] and the Frankfurt Kurnit firm's request stands at $479,851.50.[11] However, while the Court is mindful of the exceptional,

---

9. Cendali's time entries for April 24, May 1, and May 31, 2001 describe several tasks performed by her, some of which do not relate to the Wright Declaration. (See Cendali Supplemental Decl., January 28, 2003, Exh. 1). The Court is thus required to estimate how much of the time billed on each of those days is attributable to the preparation of the declaration.

On April 24, 2001, Cendali billed 5.7 hours on this action. Part of that time was spent speaking on the phone about the Wright declaration; the Court estimates that this phone call lasted .5 hours. On May 1, 2001, Cendali spent a total of 4.9 hours performing tasks related to this action. Such time included an "extremely lengthy call" from Joan Korbin Wright regarding her declaration; the Court estimates that such call lasted 1 hour. Finally, on May 31, 2001, Cendali billed 4.5 hours on this action. Such time included another "lengthy call to J. Korbin Wright to keep her in the loop." (*Id.*) The Court estimates that this call also took 1 hour.

10. The O'Melveny firm maintains that the total amount of fees incurred in defense of defendant's Lanham Act claims is $1,394,194.69. (See Cendali Decl., December 12, 2002 at 11). The Court reduced this number by the following amounts: (i) $26,045.60 (fees incurred prior to the filing of defendant's Lanham Act counterclaims); (ii) $59,227.20 (fees attributed to Paul Cirino); (iii) $14,585.70 (fee total discrepancies for Samantha Hetherington, Michael Holden, and Lauren Rasmus); (iv) $12,532.40 (one-half reduction of certain fees billed by Jennifer Choe); (v) $807.50 (fees billed by Joshua Thomas); (vi) $29,891.28 (two-thirds reduction of fees arising out of the preparation of the Wright Declaration).

11. The Frankfurt Kurnit firm's original fee request was $544,741. (See Rosenthatl Decl., December 12, 2002 at 7). That amount was reduced by $64,890 (fees incurred prior to the filing of defendant's Lanham Act counterclaims).

bad faith nature of defendant Stouffer's Lanham Act claims, it also recognizes that Stouffer is an individual of limited means and that this fee application applies only to the work done by the attorneys in defense of the Lanham Act claims. Accordingly, the Court, acting within its discretion, *see Patsy's Brand, supra,* 317 F.3d at 222, reduces both firms' fee requests by two-thirds: the O'Melveny firm is therefore awarded \$416,617.97, and the Frankfurt Kurnit firm is awarded \$159,790.55.[12] The Clerk of the Court is directed to close the file in this action.

SO ORDERED.

12. Stouffer argues that the fee award should be reduced by an additional \$50,000 to offset the monetary sanctions granted against her in the Court's September Order. However, while the sanctions arose out of Stouffer's submission of fraudulent evidence (see September Order, *supra,* 221 F.Supp.2d at 439–44), the award of attorneys' fees arises out of Stouffer's pursuit of frivolous Lanham Act claims. *Id.* at 444. Though the Court made reference to the fraudulent evidence in finding that plaintiffs were entitled to a fee award, see *id.,* such award relates to Stouffer's assertion of the bad faith Lanham Act claims themselves, and thus arises out of conduct separate and apart from the conduct for which the Court granted sanctions. Accordingly, Stouffer's request that the Court reduce the fee award by \$50,000 is denied.